IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LORRAINE MONTOYA,

       Plaintiff,

v.                                                         CIV 16-0901 JHR

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff Lorraine Montoya's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 16*), filed March 10, 2017. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc.26*. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court will grant the Motion.

## I.    Introduction

Plaintiff worked as a registered nurse until, she claims, her physical and psychological impairments rendered her disabled. In reaching the opposite conclusion, Administrative Law Judge Ann Farris ascribed "little weight" to multiple psychological opinions in the record, effectively rejecting them. In doing so, however, the ALJ failed to apply the correct legal standards and her reasoning is not supported by substantial evidence. Accordingly, the Court will reverse the ALJ's finding of nondisability, and remand this case for further proceedings consistent with this opinion.

## II.    Procedural History

Plaintiff filed an application with the Social Security Administration for disability insurance benefits under Title II of the Social Security Act on March 22, 2012, with a protective filing date of March 21, 2012. *AR* at 154, 171.[1] Plaintiff alleged a disability onset date of September 15, 2010, the day she stopped working, due to epilepsy/grand mal seizures, anxiety and depression. *AR* at 171, 175. Plaintiff most recently worked as a registered nurse, and, at the time of her hearing, had returned to work one day a week. *AR* at 43, 176.

The agency denied Plaintiff's claims initially and upon reconsideration, and she requested a *de novo* hearing before an administrative law judge. *AR* at 70-125. ALJ Farris held an evidentiary hearing on January 27, 2015, at which Plaintiff appeared via video conference. *AR* at 33-69. The ALJ issued an unfavorable decision on April 8, 2015. *AR* at 9-32. Plaintiff submitted a Request for Review of the ALJ's decision to the Appeals Council, which the Council denied on June 7, 2016. *AR* at 1-7. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[2]

---

[1] Document 11-1 comprises the sealed Certified Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

[2] The Tenth Circuit recently summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

At Step One of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. *AR* at 15. At Step Two, she determined that Plaintiff has the severe impairments of "epilepsy, obsessive-compulsive disorder, post-traumatic stress disorder (PTSD), a panic disorder, and a major depressive disorder[.]" *AR* at 15. At Step Three, the ALJ concluded that Plaintiff's impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 15-17.

When a plaintiff does not meet a listed impairment, the ALJ must determine her residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of her medical impairments. 20 C.F.R. § 404.1545(a)(1). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Plaintiff retains the RFC to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant must avoid exposure to hazardous conditions including unprotected heights, ladders, scaffolds, and dangerous moving machinery and the claimant is limited to simple, routine tasks with no production rate pace (i.e., no assembly type jobs in which the individual must finish job tasks before someone else can do his or her job), no interaction with the general public, and only occasional and superficial interactions with co-workers.

*AR* at 17.

---

At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

Employing this RFC at Steps Four and Five, and relying on the testimony of a Vocational Expert, the ALJ determined that Plaintiff is unable to perform her past relevant work as a nurse tech, licensed practical nurse and registered nurse. *AR* at 26. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform despite her limitations. *AR* at 26-27. Specifically, the ALJ determined that Plaintiff retains the functional capacity to work as an addresser in an office setting, flatwork tier, or a kitchen helper. *AR* at 27. Accordingly, the ALJ determined that Plaintiff is not disabled and denied benefits. *AR* at 28.

## III. Legal Standards

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quoted authority omitted).

## IV. Analysis

Plaintiff appeals the ALJ's decision on two grounds. *See Doc. 16*. First, she argues that the ALJ improperly rejected the opinions of her treating neurologist, Paul Walsky, M.D., that she was unable to work. *Id.* at 1. Second, she argues that the ALJ failed to give adequate reasons for

rejecting the opinions of examining psychologists Richard Madsen, Ph.D., Kathryn Benes, Ph.D., and Esther Davis, Ph.D. *Id.*

### A) Treatment of Dr. Walsky's Opinions

Paul Walsky, M.D. treated Plaintiff for a total of 25 years, beginning on March 16, 1988. *See AR* at 455-56. During the course of Plaintiff's treatment Dr. Walsky authored three notes, which the ALJ considered as "medical opinions." *See AR* at 19; 20 C.F.R   § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)[.]"). These notes opined that Plaintiff would be off work for varying degrees of time. *See AR* at 319, 320, 436. The ALJ addressed these opinions as follows:

> In his September 15, 2011 note, Dr. Walksy opined that the claimant is off work for three months; she is to return on December 19, 2011 (Exhibits 3-F, p.8). Dr. Walksy also opined in his November 23, 2011 note that "due to a medical condition," the claimant is unable to work for "an indefinite period of time" (Exhibit 3-F, p.7). On February 7, 2012, Dr. Walsky opined that the claimant will remain out of work for longer than one year, until further notice (Exhibit 9-F, p.6). I give little weight to Dr. Walksy's opinions, since they are not consistent with the record as a whole, including the objective medical evidence from treating and examining sources, her medical treatment, and her daily activities.

*AR* at 19. In other words, the ALJ "effectively rejected" Dr. Walsky's opinions that Plaintiff cannot work. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" an opinion with "effectively rejecting" it); *Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (citing *Chapo* for this proposition); *Ringgold v. Colvin*, 644 F. App'x 841, 844 (10th Cir. 2016) (same).

Plaintiff argues that the ALJ failed to give good reasons for rejecting these opinions. *Doc. 16* at 16. Relying on *Lewis v. Berryhill*, 680 F. App'x (10th Cir. 2017), she argues that the ALJ failed to apply the correct legal standards to Dr. Walsky's opinions because the reasons the ALJ

gave were neither legitimate nor specific. *Id.* at 18. The Commissioner counters that the ALJ's reasons were not as vague as those in *Lewis*, and so her decision should stand. As further explained below, the Court agrees with Plaintiff that the ALJ's first two reasons, that these findings "are not consistent with the record as a whole, including the objective medical evidence from treating and examining sources, [and] her medical treatment" were too vague to withstand scrutiny. However, even assuming *arguendo* that the ALJ erred, the Court finds any error to be harmless because the ALJ permissibly relied upon the inconsistency of these opinions with Plaintiff's daily activities.

"[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. . . . If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.

*Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004)). "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Krauser*, 638 F.3d at 1330. However, "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given . . . and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* The regulatory factors that an ALJ must consider at this second step are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to

which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331; *see also* 20 C.F.R. § 404.1527. Not every factor will apply in every case; however, an ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation omitted).

The ALJ appears to have skipped the first step under the treating physician analysis and leapt directly to the second, as she does not affirmatively state whether Dr. Walsky's opinions are entitled to controlling weight. In the past, judges in this district have held that skipping the first step in the analysis is reversible error. *See, e.g.*, *Wellman v. Colvin*, CIV 13-1122 KBM, Doc. 19 (D.N.M. Dec. 3, 2014). Faced with this issue in the first instance, this Court agrees that this result appeared mandatory under Tenth Circuit law. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("A finding at this stage (as to whether the opinion is either unsupported or inconsistent with other substantial evidence) is *necessary* so that we can properly review the ALJ's determination on appeal.") (emphasis added); *see also Robinson*, 366 F.3d at 1083 (noting that the ALJ failed to expressly state whether an opinion would be afforded controlling weight); *see also Daniell v. Astrue*, 384 F. App'x 798, 801 (10th Cir. 2010) (unpublished) (quoting *Watkins*, 350 F.3d at 1300).

However, the Tenth Circuit has also indicated that where a reviewing court can determine that an ALJ "implicitly declined to give the opinion controlling weight" there is no ground for remand. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Ms. Mays argues that the ALJ did not expressly state whether he had given Dr. Chorley's opinion 'controlling weight.' But the ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision

that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground."); *see also Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004) (unpublished) ("Implicit in the ALJ's decision is a finding that Dr. Waldrop's opinion . . . is not entitled to controlling weight."); *see also Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) (unpublished) ("It is apparent that the ALJ concluded that these opinions were not entitled to controlling weight. Although ordinarily the ALJ should have made explicit findings to this effect . . . we are not troubled by the substance of the ALJ's determination."). The Court will accordingly not reverse the ALJ for failing to discuss whether Dr. Walsky's opinions were entitled to controlling weight, as her decision to ascribe the opinion "little weight" shows that she implicitly declined to give it controlling weight.

Alternatively, Dr. Walsky's opinion that Plaintiff is unable to work is an issue reserved for the Commissioner, and so it is inherently not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d). "Opinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." As such, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." Rather, the administration "will not give any special significance to the source of an opinion on issues reserved to the commissioner." *Id.*; *see Wade v. Astrue*, 268 F. App'x 704, 706 (10th Cir. 2008) (unpublished) (affirming the failure of an ALJ to determine controlling weight on the issue of disability); *see also Mayberry v. Astrue*, 461 F. App'x 705, 708 (10th Cir. 2012) (unpublished) ("a physician's opinions on issues reserved to the Commissioner are not entitled to controlling weight or any special significance"). The Tenth Circuit recently reaffirmed these principles in

*Olson v. Berryhill*, 689 F. App'x 628, 631 (10th Cir. July 10, 2017) (affirming an ALJ's rejection of a doctor's opinion on an issue reserved to the Commissioner).

This, of course, does not end the inquiry. The ALJ was still required to consider the regulatory factors stated in 20 C.F.R. § 404.1527 in determining the weight to be assigned to Dr. Walsky's opinions, even opinions on issues reserved to the Commissioner. *Wade*, 268 F. App'x at 706; *Mayberry*, 461 F. App'x at 708 ("While a physician's opinions on issues reserved to the commissioner are not entitled to controlling weight or any special significance, the ALJ was still required to provide an evaluation of the opinions and explain his reasons for either rejecting or accepting them."). *See* SSR 96-5P, 1996 WL 374183 at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. . . . In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)."). Here the ALJ provided three reasons for rejecting Dr. Walsky's opinions that Plaintiff cannot work: that they are "not consistent with the record as a whole, including the objective medical evidence from treating and examining sources, her medical treatment, and her daily activities." *AR* at 19.

The ALJ's first two reasons are facially valid under the regulations, but they are not specific enough to withstand scrutiny. This is because the ALJ does not specify any portions of the record that are inconsistent with Dr. Walsky's opinions. Likewise, in *Lewis*, the Tenth Circuit determined that the ALJ's rationale - that an assessment was "inconsistent with other medical evidence" - was "too vague," because the ALJ failed to specify which part of the medical record was inconsistent with the assessment. *Id.* at 647. As such, the court was "left to speculate about the perceived inconsistencies between [the doctor's] assessment and the remainder of the medical record." *Id.* (citing *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), for the

proposition that "the administrative law judge's reasons for assessing a treating source's medical opinion must be sufficiently specific for meaningful judicial review."). The Tenth Circuit followed suit in *Kellams v. Berryhill*, 2017 WL 3432373 at *7 (10th Cir. Aug. 10, 2017) (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004), for the proposition that an ALJ "should specifically highlight those portions of the record that were allegedly inconsistent.").

Under *Lewis* and *Kellams*, the ALJ's failure to point to specific instances of inconsistent medical evidence in this case renders her reasoning on this point deficient as a matter of law. The same is true for the ALJ's finding that Dr. Walsky's opinions are inconsistent with Plaintiff's medical treatment: which treatment? The ALJ does not say. *See Lewis*, 680 F. App'x at 647. The Commissioner attempts to support the ALJ's reasoning on these points by citing to contrary medical evidence. *See Doc. 17* at 6. However, "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 1208 (10th Cir. 2007). Thus, the Commissioner's attempts to salvage these two reasons are rejected.

However, putting these two invalid reasons aside, the ALJ opined that Dr. Walsky's opinions were inconsistent with Plaintiff's daily activities. *AR* at 19. When discussing her credibility, the ALJ summarized Plaintiff's daily activities as follows:

> Ms. Montoya testified that she drives only in town and that she tries to keep track of the household bills. The claimant and her husband indicated in their Function Reports that the claimant is able pay bills and use a checkbook but that she does not handle a savings account because she has no savings (Exhibits 6-E, pp.4 and 7-E, p.6). She stated she uses the computer to get e-mail and goes on social media, which she stated she does for "a couple of minutes here and there" almost every day. She stated that her husband does the grocery shopping and cooking. She testified that she does not go to church but her prior statements and those of her husband contradict her testimony as discussed in detail above. The claimant testified that she helps her children with homework. However, she told Dr. Davis and the examiner from Spe Salvi that she home schools her children (Exhibits 5-F, p.10, 6-F, p.5, and 10-F, p.7). She failed to mention this in her testimony. The

claimant's husband, Michael Montoya, testified that he does all the cooking, cleaning, and shopping. However, the claimant stated in her Function Report that she is able to do cleaning, laundry, dishes, dusting, and vacuuming (Exhibit 6-E, p.3). The claimant's husband also observed in his third-party Function Report that the claimant is able to do laundry and cleaning (Exhibit 7-E, p.4). He also observed that the claimant had play dates with their daughters and friends in her home once a week. She visited with their daughters' friends' mother. This occurred once a week for two hours (Exhibit 7-E, p.7). The claimant's husband testified that the claimant eats by herself in the living room. He also stated she can generally be found on the couch on any given day. However, the claimant's own statements suggest that she is more active than her husband's testimony indicated.

*AR* at 25. Plaintiff does not challenge the ALJ's characterization of her daily activities on appeal. *See Docs. 16*, 20. Instead, she argues that the ALJ failed to point to *specific* daily activities that are inconsistent with Dr. Walsky's opinions. *See Doc. 20* at 3. But, as the Commissioner points out, Plaintiff's activities as summarized by the ALJ hardly "support Dr. Walsky's opinion that she was unable to perform *any* work." *Doc. 17* at 6 (emphasis added) (citing *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013). Plaintiff does not counter the Commissioner's reliance on *Newbold*, *see Doc. 20*, and the Court finds that it applies here, as the ALJ was required to consider whether Dr. Walsky's opinions were consistent with the record as a whole. *See Newbold*, 718 F. 3d at 1266 (affirming an ALJ's finding that a doctor's assessed extreme limitations were inconsistent with the claimant's reported activities of daily living, which included caring for her own personal needs, doing household chores, using a computer, driving, shopping, reading, watching television, visiting with friends, and attending church on a weekly basis); *see Scott v. Berryhill*, 695 F. App'x 399, 404 (10th Cir. July 10, 2017) ("Taking the [claimant's function] report as a whole, the ALJ permissibly concluded it was inconsistent with some of the extreme limitations described by Dr. Jennings."). As such, the Court will not reverse the ALJ for her treatment of Dr. Walsky's opinions that Plaintiff cannot work.

**B) Treatment of the Examining Physician's Opinions**

Plaintiff's second argument is directed at the ALJ's treatment of three examining psychologists: Richard Madsen, Ph.D., Kathryn Benes, Ph.D., and Esther Davis, Ph.D. *See Doc. 19* at 25. These doctor's findings are considered "examining medical-source opinions" under the regulations. *Ringgold*, 644 F. App'x at 843 (citing *Chapo*, 682 F.3d at 1291; 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1)). The ALJ discussed the findings of each, and decided to afford at least one aspect of them "little weight." *See AR* at 20-24. "An examining medical-source opinion 'may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the . . . regulations and the ALJ must provide specific, legitimate reasons for rejecting it.'" *Id.* The same factors that apply to treating physicians apply here:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir.2003); *Chapo*, 682 F.3d at 1291; 20 C.F.R. §§ 404.1527(c), 416.927(c)). "The ALJ is not required to mechanically apply all of these factors in a given case. . . . [i]t is sufficient if [s]he 'provide[s] good reasons in [her] decision for the weight [s]he gave to the [physician's] opinions.'" *Id.* (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). Still, those reasons must be legitimate, specific, and supported by substantial evidence.

The Court finds the ALJ's treatment of Dr. Davis's opinion to be the most deficient, and so will begin and end its discussion with her. Plaintiff presented to Dr. Davis on March 19, 2015, for a psychological evaluation for her disability claim (she was referred by her attorney). *See AR*

at 471-483. Dr. Davis conducted a clinical interview, performed a mental status examination, and had Plaintiff complete a Montreal Cognitive Assessment (MOCA), Burns Depression Inventory (BDI), and Generalized Anxiety Disorder 7-item (GAD-7) scale. *AR* at 472. Dr. Davis also reviewed Plaintiff's medical records. *Id.* In terms of her mental status, Dr. Davis noted that "[h]er overall psychomotor activity appeared to be slow." *AR* at 476. Plaintiff scored a 41 on the BDI, indicating "severe depression." *AR* at 477. Her score on the GAD-7, a 21, was "the highest score in this range that one can score[,]" indicating "severe anxiety." *AR* at 478. Her scores on the MOCA were normal. *Id.* Dr. Davis diagnosed Major Depressive Disorder, Post-Traumatic Stress Disorder, Obsessive Compulsive Disorder, Dissociative Disorder, NOS, Panic Disorder with Agoraphobia, Dysthymia, and Generalized Anxiety Disorder. *Id.* She assigned a Global Assessment of Functioning[3] (GAF) score of 41.

---

[3] As the Tenth Circuit summarized in *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 (10th Cir. 2012):

> The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. . . . GAF scores are situated along the following "hypothetical continuum of mental health [and] illness:"
>
> > • 91–100: "Superior functioning in a wide range of activities, life's problems never seem to get out of hand, is sought out by others because of his or her many positive qualities. No symptoms."
> >
> > • 81–90: "Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members)."
> >
> > • 71–80: "If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)."
> >
> > • 61–70: "Some mild symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."
> >
> > • 51–60: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

Dr. Davis also completed a Medical Assessment of Ability to do Work-Related Activities form. *See AR* at 480-81. On this form, Dr. Davis found Plaintiff to be markedly[4] impaired in her ability to "remember locations and work-like procedures . . . understand and remember detailed instructions . . . maintain attention and concentration for extended periods of time . . . perform activities within a schedule, maintain regular attendance and be punctual . . . work in coordination with or proximity to others without being distracted by them . . . complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods . . . accept instructions and respond appropriately to criticism from supervisors . . . get along with

---

• **41–50: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."**

• 31–40: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child beats up younger children, is defiant at home, and is failing at school)."

• 21–30: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."

• 11–20: "Some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute)."

• 1–10: "Persistent danger of severely hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death."

• 0: "Inadequate information."

*Id.* (citing American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)). The Court notes that the current Diagnostic and Statistical Manual has abandoned the use of GAF scores. Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders (DSM-V) at 16 (5th ed. 2013). Nonetheless, they continue to be used in psychiatric practice, as evidenced by this case.

[4] The term defined "marked" as "a severe limitation which **precludes** the individual's ability usefully to perform the designate activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week or an equivalent schedule. The individual cannot be expected to function independently, appropriately, and effectively on a regular and sustained basis." *Id.* (emphasis in original).

coworkers or peers without distracting them or exhibiting behavioral extremes . . . respond appropriately to changes in the workplace . . . [and] travel in unfamiliar places or use public transportation." *AR* at 480-81. Dr. Davis also found Plaintiff to be moderately[5] limited in her ability to understand and remember very short and simple instructions . . . maintain attention and concentration for extended periods of time . . . sustain an ordinary routine without special supervision . . . make simple work-related decisions . . . [and] set realistic goals or make plans independently of others." *Id.* On the other hand, Dr. Davis indicated that Plaintiff is only slightly (or not significantly) limited in her ability to "carry out very short and simple instructions . . . interact appropriately with the general public . . . ask simple questions or request assistance . . . [and] maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." *Id.*

After discussing this evidence, the ALJ addressed Dr. Davis's opinions as follows:

I give significant weight to Dr. Davis's assessment of slight limitations in the areas noted above, since her opinions are consistent with the record as a whole, including the claimant's treatment records, her mental health treatment, and her daily activities. However, I give little weight to Dr. Davis' assessment of moderate and marked limitations set forth above as well as the GAF score of 41, since these opinions are not consistent with the record as a whole, including the claimant's lack of mental health treatment, her treatment records discussed above, and her daily activities. I have also taken into account that Dr. Davis's evaluation is explicitly a "psychological evaluation for disability claim" (Exhibit 10-F, p.3). As such, it is only a snapshot of the claimant's functioning on the date of the examination and it lacks the longitudinal perspective of the claimant's treating sources discussed above.

*AR* at 24.

---

[5] The form defines "moderate" as "[a] limitation that **seriously interferes** with the individual's ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule. The individual may be able to perform this work-related mental function on a limited basis. However, the individual should not be placed in a job setting where this mental function is critical to job performance or to job purpose." *Id.* (emphasis in original).

Plaintiff argues that the ALJ's treatment of Dr. Davis's opinions was flawed for two primary reasons. Her first objection is that "ALJ Farris essentially divided Dr. Davis' assessment into two separate opinions, giving 'significant weight' to the portions that supported her decision and rejecting those portions that did not." *Doc. 16* at 20. While she fails to invoke a specific case holding that to do so would be improper, it is well-established in this circuit that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Harrold v. Berryhill*, 2017 WL 4924662, at *3 (10th Cir. Oct. 31, 2017). Here, the ALJ's reasons for accepting Dr. Davis's findings of slight limitations look a lot like her reasons for rejecting her findings of moderate and marked limitations. The ALJ decided to give "significant weight to Dr. Davis's assessment of slight limitations … since her opinions are consistent with the record as a whole, including the claimant's treatment records, her mental health treatment, and her daily activities. However, [she gave] little weight to Dr. Davis' assessment of moderate and marked limitations . . . as well as the GAF score of 41, since these opinions are not consistent with the record as a whole, including the claimant's lack of mental health treatment, her treatment records, discussed above, and her daily activities." *AR* at 24.

The Commissioner posits that these reasons were "valid . . . grounded in the regulations and supported by Tenth Circuit case law." *Doc. 17* at 8. Again, the Court agrees that these reasons are facially valid. *See Harrold v. Berryhill*, 2017 WL 4924662, at *5 (10th Cir. Oct. 31, 2017). However, as discussed above, current Tenth Circuit law requires more than a mere recitation of the regulatory factors. Instead, an ALJ must provide an explanation for her conclusions, *Lewis v. Berryhill*, 680 F. App'x 646 (10th Cir. Feb. 21, 2017); that is, unless there

are "obvious inconsistencies" between Dr. Davis' conclusions and the rest of the record. *See Harrold*, 2017 WL 4924662, at *5.

The Commissioner points to what she believes to be obvious inconsistencies between Dr. Davis's opinions and Plaintiff's treatment records. *See Doc. 17* at 8 (citing *AR* at 314, 315, 317, 323, 327, 372, 425, 426). The Court has reviewed these records, however, and does not find them to be inconsistent with Dr. Davis's findings. For example, while Plaintiff was noted to be "bright and alert" by Dr. Walsky on November 14, 2011, that may have been due to the Vimpat, which had been prescribed at previous appointments to address Plaintiff's loss of "cognition and clarity of thought" and which was causing "side effects which are unacceptable." *AR* at 317. Plaintiff did notice some "immediate improvement" on Lexapro during January, 2012, in that "her episodes of anxiety [had] reduced greatly," but her insurance company demanded that she not take Lexapro and she was transitioned off of that medication at the same visit. *AR* at 327, 426. Likewise, while Dr. Caruana noted that Plaintiff was "in good spirits" on February 8, 2012, he nonetheless assessed depression and noted that Plaintiff was still feeling "off a bit," and was considering transferring to a different neurologist. *AR* at 323. On May 7, 2012, Dr. Walsky notes that Plaintiff complaints were "mainly psychological" and she was complaining of "cognitive difficulty, anxiety, depression, difficulty getting involved in productive activity, etc." *AR* at 315, 426. On July 19, 2012, Dr. Walsky indicated that Plaintiff was "bright and alert" but still assessed her with "psychiatric issues." *AR* at 425. On October 19, 2012, Dr. Walsky notes that Plaintiff is "clearly unhappy and feels very stressed," further stating that while she is "bright and alert" she is also "tearful." *AR* at 314, 425. On September 18, 2013, Plaintiff's chief complaint to Dr. Lakind was "longstanding seizure disorder, depression, anxiety and other concerns" although

she stated that she felt "okay" on that date. *AR* at 372. These records are not so inconsistent with Dr. Davis's assessment to warrant discounting it in their favor.

The only thing that the Commissioner points to that is even arguably inconsistent with Dr. Davis's opinion are Plaintiff's scores on her cognitive testing, administered by Dr. Lakind on September 4, 2013, which showed "significant improvement" in Plaintiff's memory, executive function, and attention. *See Doc. 17* at 8 (citing *AR* at 372-3). However, Plaintiff, still scored more than one standard deviation below average "[r]elative to a population matched for age and education" in memory, attention, information processing speed, verbal function, and motor skills, and she was slightly below average in executive function. *AR* at 373. Her overall global cognitive score was more than one standard deviation below average at 78.3. *Id.* Moreover, Plaintiff completed a depression scale, and "[a]ccording to standard cutoffs for this instrument, [her] score [was] almost always consistent with depression[.]" *Id.* As to Plaintiff's anxiety, Dr. Lakind noted that her "level is within the mild to moderate range and should warrant a follow-up interview." *Id.* In sum, even if this Court were permitted to accept the Commissioner's post hoc rationale for why Dr. Davis's opinions as to Plaintiff's moderate and marked impairments were entitled to little weight, which it is not, *see Brownrigg v. Berryhill*, 688 F. App'x 542, 549 (10th Cir. April 19, 2017) ("the ALJ did himself did not make these observations or explicitly justify the 'little weight' designation, and filling in the blanks is not permitted."), there is no substantial evidence supporting such a conclusion.

Rather, as Plaintiff's chart in her brief illustrates well, the examining psychological sources in this case, Drs. Madsen, Benes, and Davis, reached similar conclusions as to Plaintiff's diagnoses and abilities. Dr. Madsen, who was hired by the administration, concluded on June 20, 2012, that Plaintiff's depression has impaired her ability to do work-related activities. *AR* at 312.

Specifically, he noted that while her persistence in performing work-related tasks was adequate, her pace was slow. *AR* at 311. He diagnosed her with Dysthymic Disorder, Cognitive Disorder NOS, Post-Traumatic Stress Disorder and assigned a GAF of 50. *AR* at 311. Later, on January 7, 2013, Dr. Benes diagnosed Plaintiff with Major Depressive Disorder, Single Episode, Severe with Psychotic Features, Post-Traumatic Stress Disorder, Chronic, Obsessive Compulsive Disorder, Dissociative Disorder NOS, and a GAF of 45. Dr. Benes noted that Plaintiff's "overall psychomotor activity appeared slowed . . . [her] cognitive weakness was apparent in her thought process. Her logical thinking was circumstantial, and she would often forget what she was saying, however she would be able to remember her line of thinking without aid. . . . She expressed little emotion and appeared depressed." *AR* at 340.

Despite these records' consistency, the ALJ gave Dr. Madsen's GAF score (50) "little weight, since it is not consistent with the record as a whole including the objective clinical findings (including Dr. Madsen's mental status examination),[6] the claimant's mental health treatment, and her daily activities." *AR* at 21. Likewise, the ALJ gave Dr. Benes's GAF score (45) "little weight" "since it is not consistent with the record as a whole, including the objective clinical findings, her treatment records, her mental health treatment and her daily activities." *AR* at 21. Finally, the ALJ gave "little weight" to Dr. Davis's GAF score (41) and assessment of moderate and marked limitations "since these opinions are not consistent with the record as a whole, including the claimant's lack of mental health treatment, her treatment records discussed above, and her daily activities." *AR* at 24.

---

[6] This reason, like much of the ALJ's rationale, does not appear to be supported by substantial evidence. *See AR* at 310 (While Plaintiff was "oriented to person, place, and time" and was "able to recall the year, the month, the day of the month, the date of the week and the name of the president," her "[a]ffect is blunted and consistent with a depressed mood" her thought processes were "nonpsychotic, but slow . . . . [s]he tends to lose her focus and concentration, spaces out at times.").

A pattern is emerging. The ALJ found all three examining doctor's GAF scores to be inconsistent with the record as a whole but failed to specify which parts, and these GAF scores are entirely consistent. Thus, the ALJ's conclusion is either speculative, or the ALJ impermissibly picked and chose among Plaintiff's medical records and the opinions of valid medical sources under the guise of weighing their opinions in accord with the regulatory factors. Either way, the ALJ's reasoning does not stand up to scrutiny.

The question is whether the ALJ's other reasons for according "little weight" to Dr. Davis's opinions were valid. First, she explained that Dr. Davis's opinions were inconsistent with Plaintiff's daily activities. *AR* at 24. Second, she found that "Dr. Davis's evaluation is explicitly a 'psychological evaluation for disability claim' . . . [and] [a]s such, it is only a snapshot of the claimant's functioning on the date of the examination and it lacks the longitudinal perspective of the claimant's treating sources, discussed above." AR at 24. While the Court finds these reasons to be facially valid, they do not support the rejection of Dr. Davis's opinions.

As explained above, Plaintiff's daily activities might support the inference that she is able to perform *some* work; in fact, she is currently working part-time in a very supportive environment. *AR* at 43. However, Dr. Davis did not opine that Plaintiff is completely disabled, only that her abilities are moderately and markedly impaired in certain areas. If given greater weight, her opinion might still result in a RFC finding that permits Plaintiff to perform unskilled work. *C.f. Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). However, until this analysis is undertaken in the first instance, Plaintiff's daily activities are not alone enough to justify the outright rejection of Dr. Davis's findings.

The ALJ's second reason would have more weight if Dr. Davis's opinions were truly inconsistent with the record from Plaintiff's treating sources. However, as discussed above, that conclusion is unsupported by substantial evidence. And, more importantly, the Tenth Circuit has cautioned against this type of reasoning as applied to examining sources in recent cases. *See Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) ("The ALJ gave the report little weight, in part, because Dr. Borja examined Mr. Kellams only once. This rationale may justify refusing to give Dr. Borja the status of a treating physician and according her opinion controlling weight, but as an examining source her opinion still was entitled to particular consideration. Indeed, 'an examining medical-source opinion is, as such, ... presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record.'"); *Quintero v. Colvin*, 642 F. App'x 793, 797 (10th Cir. 2016) (unpublished) ("More than 13 years ago, this court held in *McGoffin* that a physician's advocacy posture is an insufficient reason to reject a medical opinion."); *Crowder v. Colvin*, 561 F. App'x 740, 743 (10th Cir. 2014) (unpublished) (rejecting the reasoning that a medical opinion is "less trustworthy when it is sought or obtained by the claimant" and stating that "[a]lthough the lack of a treating relationship is relevant to the weight to be afforded an opinion, it is not grounds for simply rejecting an opinion."); *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012) ("The Commissioner has not cited a single authority for the facially dubious proposition that the opinion of an examining medical source is, *as such*, dismissible."). The Commissioner effectively concedes this point, as she does not address it in her response brief. *See Doc. 17*.

The ALJ discounted Dr. Davis's opinions on the basis that they were inconsistent with the record as a whole, Plaintiff's lack of mental health treatment, her treatment records and her daily activities. While these reasons are facially valid, the ALJ failed to specify which records

challenged Dr. Davis's conclusions (and the Court has found no obvious inconsistencies), and the ALJ does not explain how Plaintiff's "lack of treatment" or daily activities conflict with Dr. Davis's findings. As such, the ALJ failed to apply the correct legal standards to Dr. Davis's opinion, and her findings are unsupported by substantial evidence. Therefore, the Court will reverse the ALJ's finding of nondisability and remand this case for proper evaluation of the examining psychiatrists' opinions.

## V.    Conclusion

To summarize, the Court will not reverse the ALJ for according "little weight" to Dr. Walsky's opinions that Plaintiff cannot work. While the ALJ arguably erred by failing to follow the two-steps of the treating physician analysis, the Court can tell that she declined to give the opinions controlling weight and she provided at least one valid reason for rejecting Dr. Walsky's conclusion that Plaintiff is unable to work in *any* capacity. However, that same rationale does not support rejecting Dr. Davis's opinions, which do not necessarily preclude her from working. To the extent that Plaintiff raises further claims of error, the Court will not address them at this time "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 16*) is **granted**. This case is remanded to the Commissioner for further proceedings consistent with this opinion.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent